We have four arguments today, two related cases, and we will begin with 15-1457 In Re Pactiv. Mr. Shulman, whenever you're ready. May it please the court, the court should reverse the PTAB in both cases on appeal for two reasons. First, the PTAB affirmed rejections in which the PTO overstepped its statutory bounds when it read the defining clause of the reexamination statute, quote, for resolution of the question out of 35 U.S.C. sections 303 and 304. Doing so not only rewrote the statute, converting the reexamination to a reissue without any of the procedural safeguards of a reissue, but violated this court's precedent and deprived the patent owner of a statutorily allotted opportunity. So the new art they relied on, was it previously rejected by anybody at PTO as not raising a substantial new question? So Your Honor, some of the art was before the PTO prior to being submitted. Had they made a determination that that art did not raise a substantial new question? Implicitly, they must have, Your Honor, and the basis for that is the reexamination statute. The reexamination statute... Let's assume that I want it to be explicit. They didn't make an explicit determination that this didn't raise a substantial new question. They did not, but nor... Isn't that the basis for Belkin, that it had already been rejected as raising a substantial new question, so it couldn't be reconsidered? Your Honor, there's no statutory basis for constricting the statute based on something that the director did in Belkin, which the statute doesn't authorize him to do, nor requires him to do. So Section 303A, the court can rely on this just based on statutory construction, with Belkin merely confirming... I don't see how Belkin's at all relevant, because we're not talking about art that had been rejected by the director or his or her designee and then tried to be resuscitated. We're talking about art that had never been explicitly considered to raise a substantial new question. That, to me, doesn't make any difference. I mean, Belkin doesn't seem to answer that question at all. And whether those two statutes are the same and have same purposes or not seems irrelevant, because we're in a different factual circumstance. Your Honor, in Belkin, it directly on page 1383 of the decision, is talking about Section 303A. And it says that once a reexamination order has been issued, the reexamination, quote, may not include other prior art than what constituted the basis of the director's determination of a substantial question of patentability. Now, Section 303A of the reexamination statute says, within three months following the filing of a request for reexamination under the provisions of Section 302 of this title, which incorporates the citation of prior art under 301, so that's your third-party request, the director will determine whether a substantial new question of patentability affecting any claim of the patent concern is raised by the request with or without consideration of other prior art or printed publications. So what the statute is saying is, prior to identifying the S&Q, the examiner is not confined, the director is not confined, to just what was cited. It gives the examiner the opportunity to go beyond and expand that scope prior to finding the S&Q. What Belkin says is once that S&Q is found, you are then confined to what's in the S&Q. Well, I think you're over-reading what we did in Belkin, because what we were concerned about there was art that had already been rejected. It doesn't seem to make any sense that we meant to extend that beyond the facts of that case to art that hadn't been considered. Well, Your Honor, even if Belkin doesn't apply, we can still look at the statute and the statute still compels the result that we're advocating. Mr. Shulman, is it your position that once the examiner issues a rejection on the merits, an applicant responds, either with an argument or an amendment or both, that the Patent Office is constrained to the art of record and can't cite additional art to respond? That is correct, Your Honor. Now, if that's the case, then why are patent owners obligated to file an IDS? Well, Your Honor, patent owners are obligated to file an IDS under the regulations under the MPEP. It may not fit neatly into the statutory construction. So, according to you, patent owners are obligated to file an IDS and cite new references, but the examiner can't do anything with those references? Respectfully, Your Honor, that's not true. So there are different reasons for filing an IDS. So for one thing, the examiner can, under Section 303, the director can at any time, sua sponte, begin a new re-examination process by finding a new substantial question of patentability. But isn't that, in effect, what happens when the examiner makes a new rejection, citing new references? No. The examiner would not make a new rejection if there wasn't a substantial question of patentability. But the substantial new question of patentability is a creation of the statute, which creates a timeline of things that must happen. So, if you do it as the Patent Office did it here, you are depriving the patent owner of the statutorily allotted opportunities to respond to that SMQ. So, you got your two months after the initial rejection, right, minus a day or something, I think you... Correct. So, what is the, and I do want to get back to something else that seems important to me because I don't understand it very well, but as a practical matter, what would, assuming, and this is what I'll get to in a minute, that the examiner can actually do this, though I'm not sure the examiner can, what is the practical difference between the examiner saying, I reject, necessarily, there's a substantial question of patentability, I actually think there's a meritorious patentability objection, and you get your two months, where's the prejudice? So, Your Honor, it's the amount of opportunities that you get to respond, and we were prejudiced absolutely here. So, if you follow the statute, statute says in 303, 304, and 305, a substantial new question of patentability is found. The applicant gets one opportunity, the first opportunity, as of right, to respond to that substantial new question of patentability by filing an optional patent owner statement. Then if there is a non-final rejection, the applicant gets another opportunity as of right to respond to that rejection, that substantial new question of patentability. Then after final, the applicant may get another opportunity, although it's discretionary, whether or not it can be entered, and at that point... And then I do want to get back to the question that I have been focused on before we started this conversation. I don't see that you have made a case in this particular case for how you were prejudiced in the usual concrete sense of saying, had we had the several stages of opportunity, we would have said or introduced evidence on X, and we didn't get the chance. I don't see any argument of that sort in your brief. Your Honor, there's a substantive prejudice. First of all, had the examiner been confined to the S&Q, which the statute says for resolution of the question, had that happened, the re-examination would have terminated four years ago when the examiner did not reject the claims based on any S&Q, or did not reject at least most of the claims based on any S&Q. Had that happened, substantively, we would have been back in the district court on a case that's been stayed for six years. That's a different, and it seems to me, a more aggressive position that you win. Let me focus on the following. When I read the regulations, in particular 1.515 and 1.520, 1.515 says, in the ex-parte re-exam, the examiner examines the S&Q question on the request. 1.520 says, the director, at any time, can declare an S&Q. I do not see, and I'd like to know if you know of one and if it makes a difference, any delegation from the director to the examiner to make his own or her own sua sponte S&Q determination. I know that under patent office policies, the director has delegated that responsibility to the examiner. I haven't been able to find one. I saw that there was, in 2010, a notice in the Federal Register that probably did not actually do that, but addressed only going to the board to challenge an examiner's S&Q determination, but it's not clear to me that that goes beyond 1.515 as the ones based on the request. Then I saw something, which I think the PTO, the director, pointed to, not in this round of briefing, but back in 2014, about an April 2013 letter saying the chief judge of the board can make certain determinations. I'm not entirely sure what those determinations are from the letter, but I don't see anything, and I'm very curious, that delegates to the examiner the authority to make sua sponte S&Q determinations. If there isn't such a thing, then it feels to me like there's a problem with the director saying what logically does make sense, when the examiner found unpatentability on these new grounds, necessarily, this is a she examiner, right? She found a substantial new question of patentability. I don't know where the authority comes to do that. Your Honor, we're not aware of any authority, and we did raise that previously. We didn't raise it here because we felt the statutory construction argument was determinative whether or not the director delegated to the examiner. Can I ask a question on perhaps a threshold matter? Yes. How is it possible for this court in 2014 to have affirmed without rejecting this legal contention about S&Qs and re-exam, which is not in any way claim-specific? Your Honor, it actually is claim-specific, and that's a difference between this appeal and the prior appeal. So in the prior appeal, all of the claims that were at issue were amended very early on, whereas in this appeal, claims 1 through 10 of the 195 patent and 1 through 12 of the 921 patent were never amended. So this court may have adopted the argument that we're advocating, which is that the examiner is confined to the S&Q, but then reached a different conclusion on the open question from Belkin, what happens to amended claims? This court doesn't necessarily need to reach that. Did you say that all of the claims in the earlier case were amended claims? All of the claims in the earlier case were amended at some point, and so the court may not have been comfortable going quite that far, whereas here, half of the claims in each of the appeals, so there was claims 1 through 12, which were never amended in the 921, and then claims 13 through 28 were brand new claims. Wait, so are you trying to make a distinction between amended claims and non-amended claims? Because I didn't get that from your brief. Well, only for purposes of the collateral estoppel issue. That is a distinction between those two appeals. That's an answer to Judge Toronto's question. Well, I don't understand what you're saying. Are you saying implicitly there we said the examiners could raise the S&Q for amended claims, but not for non-amended claims? Your Honor, I see I'm in my rebuttal time. May I just answer that question? No, what we're saying is that the full resolution of the question, language of the statute, requires the examiner to resolve the question, however it's resolved, whether by arguing over prior art or amending the claims, period. It says resolution of the question without creating a special class of how that question is resolved. That's a separate issue, and why amended claims should still allow, should still terminate the reexamination. In response to Judge Toronto's question about was there a specific issue that may have compelled that decision, which was a Rule 36, without any written decision, in this case, I was merely pointing out that in that case, they may have, the court may have agreed with us on the threshold reexamination issue. If that was our legal reasoning, then it seems to suggest that there was a distinction, and that logically, we could apply that distinction here. I don't see any distinction in the statute, though. There is no distinction in the statute, which is our argument. I was merely responding to the issue of whether or not collateral estoppel would apply to prevent this appeal from going forward. Thank you. We'll restore two minutes. Thank you. I'm going to address my delegation question, because I'm stumped about where the examiner has authority to exercise the director's authority to determine an SNQ sua sponte. With respect to Rule 515, is what you're talking about, and this is a Rule that applies to 520, that's the one that addresses the sua sponte, 515 is a determination on the request, the grounds in the request. Right. And 515 provides that the examiner can make a determination with response to a request. Right. And that's not, that doesn't cover grounds that are not in the request, and that's what we're dealing with here. Prior art grounds that were not in the request, right? Have I misunderstood the premise? I think, well, I'm not going to say that you've misunderstood the premise, but let me step back a minute. I'm sorry, did the request talk about SACAI and, what's the, SACAI and Hammond and GB853 or whatever it is? No, the request did not. Okay, so we're dealing with a substantial new question of patentability outside the 1.515, no? No, the order was issued based on the request, so the re-examination order was based on the other references. What language in 1.515 says that when an examiner in ruling on the request can determine a substantial new question of patentability other than those asserted in the request? There is no rule that says that, that I know of, but here that's not what happened. Here what's happened is that in the order granting re-examination, the examiner considered the prior art that had been raised by the third party requester, and the orders are up here at... I know where they are. Okay, and they... We have very limited time, so let's focus on this. It's limited itself only to Komatsu, Yoshikawa, and the McKinney Declaration. And then there were rejections later on this other art, and you need to have a substantial new question of patentability, which is implied in the rejection. The question is if there has to be, as I think there has to be, and tell me if I'm wrong, under the statute, a director's determination of a substantial new question of patentability, the question is how did the examiner get to do that? If there were a regulation that delegated that sua sponte authority, the at any time authority in the second sentence of 303, then that would be fine. I don't see it. I want to know if there is, in fact, a delegation from the director to the examiner to exercise the at-his-own-initiative and at-any-time authority. Well, I think that the way the statute works is that once you issue the order, then 305  Let's put that aside. I want to know, and maybe you just want to answer the question, no, there is no regulatory delegation by the director to an examiner to make a determination of a substantial new question of patentability outside the terms of the request that was made by whoever the requester was. I guess other than Section 3B, which gives the director the ability to delegate any of its functions. I'm not disputing the director could delegate. I'm asking if the director has delegated. I do not know of a rule that specifically lays that out. So you do depend, therefore, on the argument that you made in the brief that once the examination goes, we're now kind of into the normal, what is it, 132, 133? Exactly, because 305 provides that once the, there's a threshold determination in Section 303 and 304, and once you get past that. Why would that argument not have prevailed in Belkin under the express language that this court used in Belkin discussing the terms of the counterpart of 303 and 304? All that was at issue in Belkin was whether, well, the first issue that was at issue in Belkin was whether or not the board had jurisdiction to consider the S&Q determination, which it did, the court held did not under 312C, Section 312C specifically. I understand the difference in procedural context and that there was a, and that in that case, the director had actually said, no, I don't think X is a S&Q, but we said repeatedly as a statutory matter that there is an affirmative requirement for there to be an S&Q from the director on a particular matter in order for the re-exam to rest on that piece of prior art, that the directive setting out, the re-examination order defines the terms of the re-exam, so the statutory interpretation was broader than the specific procedural context. But what Belkin said, and I quote, Belkin said that the PTO can make any new rejection as long as the rejection also meets the substantial new question of patentability requirements, so it obviously had a conception of rejections as going broader. If the director finds one, right? Well, it said the PTO can make any new rejection. And this court in other cases, such as Hineker, has, in Hineker, this court clearly. What are you reading from, by the way, in that, when you're quoting? That's at 1383. Right. Where? At the, sort of, the first full paragraph in 1383, it says, inter-parties re-examination is not totally limited to those issues suggested by the requester that present a substantial new question of patentability. Right, and then what's the citation after the sentence? It does refer to the ex-party re-exam statute, not the inter-parties one, the ex-party 303A, and it's specifically about the sentence that says, and it is quoted in the parenthetical, on his own initiative and at any time the director may determine whether a substantial new question of patentability is raised. Right? So that's what that sentence very specifically says. Of course the director can do it. That doesn't mean the examiner can do it without regulatory authorization. But the rules, the re-examination rules clearly contemplate that the examiner, sorry, 550, Rule 550, they certainly contemplate that the examiner can consider other prior art. In 555, for example, it says that the examiner should consider and evaluate all information material to patentability in the re-examination proceeding. That's in 555A. It also, in 555A, it says that the patent owner has a duty to disclose and that that information should be considered by the examiner. I think it's quite clear. Do I understand this right? I mean, 555 is about both types of re-exams, right? Inter-parties and ex-party? Correct. So that would be equally true in the Belkin context? Correct. So how could that mean something contrary to what this court said in Belkin? The statute limited the examiner to do. I respectfully disagree with what Belkin court was saying. What the Belkin court was deciding is when prior art has been determined to not raise an S and Q, which it had in that case, in the order the examiner had specifically decided that certain prior art did not raise an S and Q, and therefore, what the court said in Belkin was that once it's made that determination, it cannot then utilize or consider that prior art in its rejections, which makes sense because an S and Q determination is a lower threshold. It's a substantial likelihood standard, and therefore, it wouldn't make sense that the examiner could have written a rejection based on that prior art. And that's all that Belkin stands for, and that's all that Belkin is really holding. It was about the jurisdictional issue, and secondarily, it was about whether or not there was a final written decision favorable to patentability, and for those reasons, it held there was no final decision because the examiner did not consider those references and could not have considered those references, and therefore, there had never been a final decision favorable to patentability in Belkin, and that's all that that case stands for, and that's simply different from this case where the examiner is considering new prior art that was brought in by PACTIV, and PACTIV, it included that prior art in addition to the prior art that had been erased by the requester and combined that to write its first office action. Can I ask you a question that goes to the issue preclusion question? Yes. I know you think that the same answer applies whether a claim has been amended or not. Am I understanding that you think that there is at least a potential distinction so that even if I thought the examiner could not do this for an unamended claim, you would have an argument, maybe you even have made an argument, did in the earlier case, that the examiner has the wider latitude for amended claims, which after all are new? Nobody could have requested a re-examination of a claim that didn't exist before. Right. I do think there is possibly a distinction, however, I do believe that in the prior appeal at 2071 and 2072 of the record, PACTIV made arguments both with respect to the original claims and said, that's in 2171, it says those original claims, which also were based on S&Qs that were not in the original order, and then in 2072, it made a case for amended claims, and it asked for both of those two rejections to be remanded to the PTO for confirmance, and this court, by affirming the board, necessarily rejected both arguments, both sets of arguments, because it could not have, at least with respect to the original claims, it would have had to have remanded if this court did not agree that those claims were not improper. If it had agreed with PACTIV's argument that those rejections were improper, it would necessarily have had to have remanded those claims to the PTO, and it did not. So there were both unamended and amended claims at issue in this earlier case. Exactly. If there are no additional questions, I will reserve the remainder of my time. Thank you. Your Honor, just to address that last point, they were all amended claims. What we had asked for was something rather novel in the remand, which was because the PTO, we thought, had gone beyond the statutory bounds to essentially turn back the clock on those amendments and allow the claims as they were in their original form prior to the amendment. But they were all amended, notwithstanding the fact that we asked for those original claims to be issued, and the court may not have wanted to do that, because that would have been, we submit a novel kind of remand argument. I do want to address a number of things, in particular, this issue about Belkin and rejecting the prior art. The Belkin decision goes through the entire statutory analysis and comes up with its conclusion, and doesn't address this rejection of the three pieces of prior art until the end. And at the very beginning of page 1384 is where it addresses this. And at this point, the court has already made its conclusion about the statutory construction. And so when it addresses this, it says, quote, secondly, if there had been any doubt in this case, and then it goes on to say the examiner rejected those three, talks about the fact that the examiner rejected those three references. So the rejection of the three references was merely confirmatory of the statutory construction. In fact, this court said, to resolve the question on appeal, we start with the statute. Also, in relation to the idea that the regulations may require the examiner to go out and search our 1.515 and 520, again, let's just take a step back to the statute. As this court said in Belkin on page 1384, statutes rank higher than regulations, which rank higher than the NPEP.  And I want to raise one more issue on Judge Toronto. Your point about the commissioner can do certain things, and then the examiner can do certain things. Judge Niece's concurrence in In Re Etter, which addressed the scope of ex parte reexamination, this is on page 15 of our reply brief. She notes, nothing in the statute constrains the commissioner, so at that time it was the commissioner, now the director, of course, from finding more than one substantial new question of patentability. However, under the statute, the commissioner, she emphasizes commissioner, is required to make such determination. He should not merely allow reexamination to proceed in any direction at the discretion of an examiner. Clearly, reexamination was not designed to allow the PTO simply to reconsider and second guess what it has already done. That's the In Re Etter case, construing ex parte reexamination, which is making exactly the point. The director finds the SNQ, confines the examiner. If you want a new SNQ, the director finds one, you start the process all over again. What is the role, I guess Judge Lynn asked this question earlier, of an IDS in proceeding that's, under your view, confined to the affirmatively stated substantial new questions in the reexam order? So I see I'm out of time to answer the question. The IDS has a number of purposes. And if you see what we've submitted in the IDS beyond the ART, we also submitted, for example, the invalidity contentions that were at issue in the prior litigation. So even though you can't use the IDS to formulate a new rejection, the examiner can use the IDS to, for example, see how the parties are arguing combining the ART. The examiner can also, under the rules and under the statute, go out and use other ART to rebut arguments of patentability. So, for example, were I to say, if I had a case, ice does not melt at 32 degrees, the examiner can go out and find other ART or statements in an IDS where I may have admitted that ice melts at 32 degrees to rebut that argument. What it can't do without an SNQ under Section 303 is use that ART to formulate a new rejection. But the examiner could, and the director, as I stand here today, can issue, sua sponte, a new SNQ based on any of the ART it wants, including what was in the IDS. Can I ask, do you have a view about whether the director could do that retroactively for this case? I don't believe the director can do it retroactively because, again... Or retroactively delegate authority to the examiner? That still doesn't solve the procedural safeguards where, for example, in the 195... Do you think the director can delegate this authority at all? Well, under Section 3B of the statute, the director can delegate certain authority, whether the director has or not. Right, but it seems to me, based upon what you're arguing about procedural rights, that you think the director couldn't delegate this authority to the examiner. Is that right? I believe the director could, and I believe there are... Well, then, if he could, then wouldn't that run afoul of your argument that you get certain rights and at times to respond and things like that? No, because the substantial due question of patentability, when found by the director, is still a creation of the statute, which confines the examination and which determines what happens following. So, if, for example... So, if the director delegated to the examiner and said, during the course of the reexamination, you have the authority to declare a new substantial due question based upon prior ART submitted, that's okay with you? No, not in the course of a reexamination. You can do that and restart a new one. So, you don't think the director can delegate the authority that we're talking about here, about what the examiner did here? That is correct, Your Honor. I was saying the director can delegate to an examiner to create the S&Q, but not to do it midstream. So, the examiner could declare, basically, an amended reexam order? Or a new one? A new one. As long as the procedural rights are given in terms of two months. Correct. So, for example, the GBA 53 reference was not raised until a final office action in the 195 patent. You have no right, no absolute right to respond to a final office action. You necessarily are confined in how you respond to a final office action. The examiner might not enter it. And in a reexamination, unlike a reissue, where you have full unbounded patentability, you could file an RCE or a continuation if that amendment's not entered. And here, on page 647 of the record in the advisory action, post the final office action, the examiner actually took us to task for not presenting additional evidence to counter the arguments. Well, that's only because the procedural posture had hampered us. That's the specific prejudice, Your Honor, that you were talking about. Not having a full opportunity to respond to the S&Q. And then the examiner calling us on it and saying, you didn't present sufficient evidence for me to really reconsider my argument. Well, after final, if we want to get it entered, we have to be really careful about not overstepping our bounds. Or it might not get entered at all, because after all, you're done. Thank you, Your Honor. Thank you. This case is submitted.